**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**

TROY KING and ROBERT MARTIN,

      *Plaintiffs*,

v.

                              3:17-CV-390-DJH

                      Civil Action No. _____

LOUISVILLE/JEFFERSON COUNTY METRO
GOVERNMENT,

      *Defendant.*

---

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

---

### INTRODUCTION

1.      This civil-rights lawsuit seeks to vindicate Plaintiffs' rights under the Fourteenth Amendment to the U.S. Constitution to operate their businesses free from unreasonable and protectionist governmental interference. Plaintiffs challenge the constitutionality of a Louisville/Jefferson County Metro Government law that bans mobile food unit vendors, colloquially known as "food trucks," from operating anywhere within 150 feet of restaurants, cafés, or other brick-and-mortar eating establishments that sell "similar" food absent those establishments' written permission.

2.      Plaintiffs Troy King and Robert Martin (collectively, the "Plaintiffs") operate food trucks and serve their customers freshly cooked food. Their food truck businesses allow them to support themselves, their families, and also employ others who seek to do the same.

3.      Mobile vending has long been an entry point to entrepreneurship in cities across America. In Louisville, Kentucky, mobile food vendors support their communities by serving

food, drinks, and snacks at low prices and convenient locations for busy customers. But the Louisville/Jefferson County Metro Government ("Defendant") makes it very difficult for food truck vendors like Plaintiffs to operate and grow their businesses, by enforcing an anticompetitive restriction barring food trucks from vending within 150 feet of restaurants that sell similar food, without the restaurants' written permission to do so.

4.      Defendant bars Plaintiffs from operating their food trucks within 150 feet of any restaurants, cafés, and other brick-and-mortar eating establishments that sell similar food. Louisville/Jefferson County Metro Government Code of Ordinances ("LMCO") § 115.369(E) (the "150-Foot Ban"). The only way that Plaintiffs and other vendors can attempt to avoid this proximity ban is to ask their brick-and mortar competitors for written permission allowing them to operate their food trucks. *Id.* If even one restaurant or other brick-and-mortar eating establishment selling similar food within 150 feet refuses, the food truck is prohibited from operating at that location. Even if a restaurant within 150 feet of a food truck does not sell similar food, a food truck must immediately stop vending if the restaurant adds an item to its menu that is similar to that offered on the food truck's menu.

5.      The 150-Foot Ban applies to all food trucks regardless of whether they are located on private property with the owner's permission or legally parked on public property.

6.      Defendant's 150-Foot Ban against food trucks does not further any public health or safety concern; its actual purpose and effect are to protect restaurants and other brick-and-mortar eating establishments from competition by food trucks.

7.      Defendant's actions deprive Plaintiffs of their right to pursue a lawful occupation free from unreasonable governmental interference, and violate the guarantees afforded Plaintiffs

2

by the Fourteenth Amendment of the U.S. Constitution. Accordingly, Defendant's 150-Foot Ban against food trucks should be declared unconstitutional and permanently enjoined.

## JURISDICTION AND VENUE

8. Plaintiffs Troy King and Robert Martin bring this civil-rights lawsuit pursuant to the Fourteenth Amendment to the U.S. Constitution; the Civil Rights Act of 1871, 42 U.S.C. § 1983; and the Declaratory Judgment Act, 28 U.S.C. § 2201.

9. Plaintiffs seek declaratory and injunctive relief against enforcement of the 150-Foot Ban against food trucks, contained in LMCO § 115.369(E), which violates the Fourteenth Amendment to the U.S. Constitution.

10. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, 2201, 2202 and 42 U.S.C. § 1983.

11. Venue lies in this Court pursuant to 28 U.S.C. § 1391.

## THE PARTIES

12. Plaintiff Troy King operates the Pollo food truck, a licensed mobile food truck from which he vends on both public property and private property in the city of Louisville.

13. On September 2, 2016, Defendant forced Troy to move his food truck and abandon his vending location by threatening to issue him a citation and tow his food truck for operating within 150 feet of a restaurant that sold similar food.

14. Troy seeks to operate his food truck without having to avoid vending locations within 150 feet of restaurants and other eating establishments that sell similar food, and without having to get written permission to operate his food truck from brick-and-mortar competitors under the 150-Foot Ban.

3

15.     Plaintiff Robert Martin operates the Red's Comfort Foods food truck from which he vends on both public property and private property in the city of Louisville.

16.     In the summer of 2015, Defendant forced Robert to move his food truck and abandon his vending location after citing him for vending within 150 feet of a restaurant that sold similar food.

17.     Robert seeks to operate his food truck without having to avoid vending locations within 150 feet of restaurants and other eating establishments that sell similar food, and without having to get written permission to operate his food truck from brick-and-mortar competitors under the 150-Foot Ban.

18.     Defendant Louisville/Jefferson County Metro Government is a consolidated local government, as established by KRS 67C.101, *et seq.* within the State of Kentucky. Defendant is located at 601 West Jefferson Street, Louisville, Kentucky.

## FACTUAL ALLEGATIONS

### The Food Truck Industry in the United States

19.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in ¶¶ 1 through 18 of this Complaint as if fully set forth herein.

20.     Mobile food establishments, such as the food trucks operated by Plaintiffs, are commercial vehicles that enable entrepreneurs to travel from place to place, or remain in a fixed location, in order to sell and serve food to customers.

21.     Food trucks can take many different forms.  Some only serve food that is prepared and prepackaged. Other food trucks, like those Plaintiffs operate, are self-sufficient mobile kitchens where people prepare and serve food directly from the food truck.

4

22. Historically, food trucks served simple products such as sandwiches and tacos, often to construction workers and manual laborers.

23. Today, food trucks serve a wide variety of cuisines to diverse clientele. The general public now benefits from food options that can range from Korean fusion, to cupcakes, to BBQ.

24. Food trucks provide a number of benefits to their communities, including both convenience and a greater number of food choices for consumers.

25. Food trucks, including those operated by Plaintiffs, are job creators. In addition to the job created by the entrepreneur who opens a food truck, food trucks often hire additional staff. Food trucks also provide jobs to those who build, equip, and maintain the trucks.

26. Food trucks can help enliven urban communities. The popularity of food trucks often makes them a destination for loyal and prospective customers alike. Food trucks can help bring new energy to local communities.

27. Food trucks also serve as complements to brick-and-mortar restaurants. Many food-truck entrepreneurs go on to open restaurants, and restaurant entrepreneurs may later open food trucks.

### Louisville's 150-Foot Proximity Ban Against Food Trucks

28. Defendant severely restricts the marketplace for mobile food vending in the city of Louisville. Food trucks in Louisville typically vend from multiple locations on both public property and private property.

29. A licensed mobile food unit vendor, as defined under LMCO § 115.350(G) (and referred to herein as a "food truck" or "food trucks"), is subject to the "Mobile Food Unit Vendor Standards" contained in LMCO § 115.369.

30. According to Defendant's 150-Foot Ban, "[n]o mobile food unit vendor shall sell or vend from his or her vehicle or conveyance within 150 feet of any restaurant, café, or eating establishment offering as a main featured item or items similar to that restaurant, café, or eating establishment at the time it is open for business unless approval is obtained in writing from the owner of the business." LMCO § 115.369(E).

31. For food trucks to vend within 150 feet of a "restaurant, café, or other eating establishment," (collectively referred to herein as "restaurant" or "restaurants") that sells similar food, Defendant requires that food trucks obtain "approval . . . in writing" from each restaurant that sells similar food within 150 feet of their vending location (referred to herein as the "Permission Slip Exception"). LMCO § 115.369(E).

32. All food trucks that operate in Louisville, including those operated by Plaintiffs, are subject to Defendant's 150-Foot Ban regardless of whether they are vending on private property or vending while legally parked on a public street.

33. A violation of the 150-Foot Ban is punishable by a fine of up to $50 per day, up to 30 days in jail, or both. *See* LMCO § 10.99.

34. Defendant can also suspend or revoke a food truck owner's vending license for violating the 150-Foot Ban. LMCO § 115.364(D).

35. Restaurants, cafés, and eating establishments in the city of Louisville are not subject to a proximity restriction that restricts where they can operate and sell food like the 150-Foot Ban.

36. Restaurants, cafés, and eating establishments do not need to get written permission from any other restaurants, cafés, or eating establishments before opening for business and selling food.

**Impact of 150-Foot Ban on Louisville's Food Trucks**

37.     The 150-Foot Ban forces food trucks to move and abandon their vending locations solely because a restaurant or other brick-and-mortar eating establishment sells similar food within 150 feet of their food truck.

38.     The 150-Foot Ban keeps food trucks away from where customers want them and prevents food trucks from operating in many communities, including downtown Louisville.

39.     The 150-Foot ban creates "no-vending" zones—shaped like a circle having a 150-foot radius—surrounding every restaurant, café, and other brick-and-mortar eating establishment in the city, within which no food truck selling similar food may vend without permission.

40.     For any possibility at vending from a location that is within 150 feet of a restaurant, the owner of a food truck must: (1) approach the owners of every restaurant selling similar food as the food truck located within 150 feet of the food truck's proposed vending location; (2) ask each of these would-be competitors for permission to operate a food truck within 150 of their restaurant; and (3) obtain "approval . . . in writing." *See* LMCO § 115.369(E).

41.     Under the 150-Foot Ban's Permission Slip Exception, owners of restaurants may refuse to grant food trucks permission to operate within 150 feet of their restaurant for any reason and need not provide a reason for denying such permission.

42.     Restaurants, cafés, and other eating establishments are free to revoke permission previously granted to food trucks under the Permission Slip Exception at any time, and without giving the owner of a food truck any notice that permission is being revoked.

43.     The Permission Slip Exception to the 150-Foot Ban puts food trucks at risk of losing their vending location if the owner of a restaurant granting its permission to operate decides to revoke its permission.

44. If the owner of a restaurant revokes the permission they previously granted to a food truck owner under the 150-Foot Ban's Permission Slip Exception, the affected food truck must immediately cease all vending operations at the previously-approved vending location.

45. Restaurants are not prohibited from charging money for granting a food truck written approval to operate within 150 feet under the Permission Slip Exception.

46. The protectionist purpose and effect of the 150-Foot Ban is also reflected by its "similar" food provision. *See* LMCO § 115.369(E).

47. If no restaurants sell similar food within 150 feet of a food truck's proposed vending location then food trucks may vend from that location without violating the 150-Foot Ban. Vending is prohibited, however, if at least one restaurant within 150 feet of a food truck's proposed vending location sells similar food as the food truck.

48. For any possibility at vending from a location that is within 150 feet of a restaurant, the owner of a food truck must: (1) identify every restaurant located within 150 feet of the food truck's proposed vending location; and (2) determine if these would-be competitors sell "similar" food. *See* LMCO § 115.369(E).

49. The 150-Foot Ban also poses a risk to food trucks that do not currently operate within 150 feet of a restaurant that sells similar food.

50. The 150-Foot Ban subjects all food trucks in Louisville, including those operated by Plaintiffs, to a constant threat of having their food trucks shut down by Defendant in the event a new restaurant, café, or other eating establishment serving similar food opens up within 150 feet of their food truck.

51. Under the 150-Foot Ban, if a new restaurant opens for business within 150 feet of a food truck and sells similar food, the food truck must cease vending operations immediately.

52.     To reopen, Defendant requires that operators of food trucks obtain approval in writing from the owner of the new restaurant that sells similar food within 150 feet before legally resuming vending operations at their vending location, even if the food truck's vending location pre-existed the new restaurant's arrival.

53.     The 150-Foot Ban also subjects all food trucks in Louisville, including those operated by Plaintiffs, to the constant threat of having their food trucks shut down by Defendant whenever an existing restaurant, café, or other eating establishment that does not currently sell similar food as the food truck begins selling food that is similar to that sold by the food truck.

54.     If a food truck is vending within 150 feet of an existing restaurant that does not sell similar food, the food truck must cease vending operations immediately under the 150-Foot Ban if the restaurant adds an item to its menu that is similar to something sold by the food truck.

55.     To reopen, Defendant requires that operators of food trucks obtain approval in writing from the owner of the existing restaurant that began selling similar food within 150 feet of the food truck, before legally resuming operations from their food truck at their vending location.

56.     Owners of restaurants sometimes add items to their menu in order to proactively trigger the 150-Foot Ban and force food trucks selling similar food to cease vending operations and abandon their vending location.

57.     Defendant has enforced the 150-Foot Ban on the basis of food trucks selling items containing bread within 150 feet of a restaurant that also sells items containing bread.

58.     Food truck entrepreneurs risk spending months developing a vending location and building a customer base, only to have it all taken away under the 150-Foot Ban.

59.    Food truck entrepreneurs that violate the 150-Foot Ban are subject to daily fines and jail time.

60.    Violations of the 150-Foot Ban also put food truck entrepreneurs at risk of having their vending license suspended or revoked.

61.    The 150-Foot Ban also significantly burdens food truck owners who seek to vend on private property that they own or lease; they are prohibited from doing so if that property is located within 150 feet of a restaurant selling similar food as a food truck.

62.    Even if a food truck initially has no problem operating from a vending location due to the 150-Foot Ban, a new restaurant may open or an existing restaurant may change its menu, forcing the food truck to move and abandon its vending location.

### The 150-Foot Ban's Failure to Advance a Legitimate Governmental Interest

63.    The 150-Foot Ban advances no public health or safety purpose, nor any other legitimate governmental interest.

64.    Defendant has no evidence that the 150-Foot Ban advances any public health or safety purpose.

65.    Defendant has no evidence that the 150-Foot Ban advances any legitimate governmental interest.

66.    The purpose and effect of the 150-Foot Ban is to protect restaurants from competition by food trucks.

### Plaintiffs and Their Vending Businesses

### TROY KING

67.    Plaintiff Troy King operates Pollo, a licensed food truck in Louisville.

68.    Vending is the primary source of income for Troy and his family. Pollo specializes in gourmet fried chicken dishes, including chicken and waffles, fried chicken tacos, chicken gyros, and fried chicken sandwiches. Troy also buys old buses and vans, converts them into food trucks, and resells them to customers around the United States.

69.    After working in the food service industry for several years, Troy purchased his first food truck and opened Pollo in June of 2014. Later that year, in November 2014, Troy expanded his business by buying a bus and converting it into a second food truck. By 2015, Troy was vending from both vehicles and had seven employees. Each week, Troy vends on private property and public property in Louisville.

70.    Troy currently vends from his Pollo food trucks on private property at events and private businesses. He also travels outside of Louisville and vends at festivals around the country. Although Troy also vends on public property, the 150-Foot Ban has forced him to restrict his vending to undesirable vending locations where customers are difficult to find.

71.    Prior to September 2016, Troy would regularly park his Pollo food truck on public property in downtown Louisville and vend on S. Fifth Street between Market Street and Main Street. By regularly vending at this location, Troy built a clientele and customers knew where to find him during lunch.

72.    In September 2016, Troy was legally parked in downtown Louisville on S. Fifth Street between Market Street and Main Street and began vending. Defendant's inspector approached Troy's Pollo food truck and, in front of Troy's customers, threatened to issue a citation because Troy's vending location was within 150 feet of Cravings ala Carte, a restaurant that sells chicken and that is located in the basement of the National City Tower at 101 South 5th Street.

73. Defendant's inspector also threatened to tow Troy's Pollo food truck if he did not remove it and abandon his vending location on S. Fifth Street.

74. After being threatened with a citation, and knowing that the clientele he had built at his vending location on S. Fifth Street would be lost, Troy ceased vending, turned away his customers, and abandoned his vending location.

75. Troy determined that asking for written approval to operate within 150 feet from the restaurant Cravings ala Carte was futile because Defendant's inspector identified that restaurant as having complained that Troy was vending in violation of the 150-Foot Ban.

76. Troy does not believe he should need permission from a restaurant, or any other brick-and-mortar eating establishment, in order to operate his vending business.

77. The 150-Foot Ban makes it illegal for Troy to operate his Pollo food truck within 150 feet of the many restaurants, cafés, and eating establishments in Louisville that sell chicken.

78. The 150-Foot Ban also makes it difficult for Troy to expand his vending business in Louisville.

79. Troy explored the possibility of operating his Pollo truck in the East Market District (bordered by E. Main Street, E. Jefferson Street, S. Hancock Street, and Baxter Avenue). He had to abandon his expansion efforts, however, after learning that two restaurants sold chicken within 150 feet of a possible vending location on S. Campbell Street near E. Market Street.

80. Troy did not pursue a new vending location in the East Market District because, even if he obtained written permission from the two restaurants within 150 feet of the possible vending location at S. Campbell Street under the Permission Slip Exception, the business risk created by the 150-Foot Ban on an investment into a new food truck at this location is too great

for Troy. Even if both restaurants that sell chicken within 150 feet gave him permission to operate, Defendant could shut down his new food truck location immediately if even one of those restaurants revoked its permission, forcing Troy to lose customers that know where to find him. The 150-Foot Ban would also force Troy to cease vending if a new restaurant opened within 150 feet and sold similar food, unless he also obtained their written permission to reopen.

81.    The 150-Foot Ban also makes it difficult for Troy to operate his Pollo food truck in the East Market District at the possible vending location on S. Campbell Street because he would need to monitor the menu of a third restaurant located within 150 feet that does not currently sell chicken. It does not make sense for Troy to establish a new vending location and build a clientele there only to abandon both due to the 150-Foot Ban, solely because a restaurant within 150 feet begins selling similar food.

82.    Troy has observed Defendant enforce the 150-Foot Ban against other food truck entrepreneurs, forcing them to abandon their vending locations.

### ROBERT MARTIN

83.    Plaintiff Robert Martin operates Red's Comfort Foods, a licensed food truck in Louisville.

84.    Red's Comfort Foods specializes in gourmet hot dogs and sausages using recipes that Robert has collected while working in cities across the United States. Vending is the primary source of income for Robert. Each week, Robert vends on private property and public property in Louisville.

85.    After retiring from a long career as a cameraman for a television network, Robert moved to Louisville and began working in the food service business. In 2011, Robert opened his food truck business and began vending in and around downtown Louisville.

86.     Robert currently vends from his Red's Comfort Foods food truck on private property at events and private businesses, including the Kentucky Exposition Center (commonly called "the Fairgrounds"), and by invitation at the ADP business campus. Although Robert also vends on public property, the 150-Foot Ban has forced him to restrict his vending to undesirable vending locations where customers are difficult to find.

87.     For most of 2014 until the summer of 2015, Robert would regularly park his Red's Comfort Foods food truck on public property in downtown Louisville and vend on Main Street, between Third Street and Fourth Street. By regularly vending at this location, Robert built a clientele and customers knew where to find him during lunch.

88.     In the summer of 2015, Robert legally parked in downtown Louisville on Main Street, between Third Street and Fourth Street and began serving customers at his usual vending location. Defendant's inspector approached the Red's Comfort Foods food truck and, in front of his customers, issued Robert a citation because his vending location was within 150 feet of Down One, a restaurant that sells bread and pork and that is located at 321 Main Street.

89.     After being cited under the 150-Foot Ban, and knowing that the clientele he had built at his vending location on Main Street would be lost, Robert ceased vending, turned away his customers, and abandoned his vending location.

90.     Robert later met with Defendant's prosecutor at the courthouse located at 600 W. Jefferson Street to discuss the citation. In order to maintain his vending license, Robert agreed to not receive another citation for a period of six months.

91.     Robert stopped vending in downtown Louisville after being cited and restricted his vending operations to the fairgrounds at the Kentucky Exposition Center. He did so in order to avoid another potential violation of the 150-Foot Ban and losing his vending license.

92.     Robert determined that asking for written approval to operate within 150 feet from the restaurant Down One was futile because Defendant's inspector identified that restaurant as having complained that Robert was vending in violation of the 150-Foot Ban.

93.     In late-spring 2016, Robert attempted to establish a new vending location in downtown Louisville on S. Fifth Street between Market Street and Main Street. Shortly after he began vending, Defendant's inspector approached Robert's Red's Comfort Foods food truck and threatened to issue a citation because Robert's vending location was within 150 feet of Cravings ala Carte, a restaurant that sells hot dogs and that is located in the basement of the National City Tower at 101 South 5th Street. Robert was forced to abandon that vending location.

94.     Robert determined that asking for written approval to operate within 150 feet from the restaurant Cravings ala Carte was futile because Defendant's inspector identified that restaurant as having complained that Robert was vending in violation of the 150-Foot Ban.

95.     Robert does not believe he should need permission from a restaurant, or any other brick-and-mortar eating establishment, in order to operate his vending business.

96.     The 150-Foot Ban makes it difficult for Robert to operate his Red's Comfort Foods food truck in and around Louisville because it creates no-vending zones that extend 150 feet around every restaurant, café, and eating establishment that sells sandwiches, hot dogs, or sausages.

97.     Defendant's inspector communicated to Robert that the 150-Foot Ban applies if he sells an item with bread within 150-feet of a restaurant that also offers food items with bread. Nearly every restaurant, café, and eating establishment in Louisville offers items on their menu that contain bread.

98.    Even if Robert obtained written permission from restaurants within 150 feet of a possible vending location under the Permission Slip Exception, the business risk of losing a vending location under the 150-Foot Ban is too great for Robert. Even if all the restaurants within 150 feet of a vending location gave him permission to operate, Defendant could shut down his new food truck location immediately under the 150-Foot Ban if even one of those restaurants revoked its permission, forcing Robert to lose customers that know where to find him. The 150-Foot Ban would also force Robert to cease vending if a new restaurant opened within 150 feet and sold similar food, unless he also obtained their written permission to reopen.

99.    The 150-Foot Ban also makes it difficult for Robert to establish a vending location because Robert would need to monitor the menus of restaurants within 150 feet that do not sell similar food. It does not make sense for Robert to establish a new vending location and build a clientele there only to abandon both due to the 150-Foot Ban, solely because a restaurant within 150 feet begins selling similar food.

100.    Robert has observed Defendant enforce the 150-Foot Ban against other food truck entrepreneurs, forcing them to abandon their vending locations.

## INJURY TO PLAINTIFFS

101.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in ¶¶ 1 through 100 of this Complaint as if fully set forth herein.

102.    The 150-Foot Ban prohibits Plaintiffs' food trucks from operating within 150 feet of restaurants, cafés, and other eating establishments that sell similar food absent those establishments' written permission.

### PLAINTIFF TROY KING

103.    Plaintiff Troy King would like to resume vending at the location he was previously forced to abandon due to Defendant's enforcement of the 150-Foot Ban, and also operate his food truck at vending locations that are prohibited under the 150-Foot Ban.

104.    But for the specific application of the 150-Foot Ban against Plaintiff King, he would regularly vend from his Pollo food truck in downtown Louisville without the constant threat of being cited by Defendant because a restaurant, café, or other eating establishment is selling similar food within 150 feet of his vending location.

105.    But for the specific application of the 150-Foot Ban against Plaintiff King, he would resume operating his food truck business at a vending location at S. Fifth Street between Market Street and Main Street, within 150 feet of Cravings ala Carte, a restaurant that sells chicken and that is located inside of the National City Tower at 101 South 5th Street.

106.    But for the specific application of the 150-Foot Ban against Plaintiff King, he would operate his Pollo food truck business at a vending location in the East Market District on S. Campbell Street near E. Market Street, a vending location prohibited by the 150-Foot Ban because two restaurants within 150 feet sell chicken.

### PLAINTIFF ROBERT MARTIN

107.    Plaintiff Robert Martin seeks to resume vending at locations he was previously forced to abandon due to Defendant's enforcement of the 150-Foot Ban.

108.    But for the specific application of the 150-Foot Ban against Plaintiff Martin, he would regularly vend from his Red's Comfort Foods food truck in downtown Louisville without the constant threat of being cited by Defendant because a restaurant, café, or other eating establishment is selling similar food within 150 feet of his vending location.

109.   But for the specific application of the 150-Foot Ban against Plaintiff Martin, he would resume operating his food truck business at a vending location on Main Street, between Third Street and Fourth Street and within 150 feet of Down One, a restaurant that sells bread and pork and that is located at 321 Main Street.

110.   But for the specific application of the 150-Foot Ban against Plaintiff Martin, he would resume sometimes operating his food truck business at a vending location at S. Fifth Street between Market Street and Main Street, within 150 feet of Cravings ala Carte, a restaurant that sells hot dogs and that is located inside of the National City Tower at 101 South 5th Street.

**COUNT I:**
**FOURTEENTH AMENDMENT CHALLENGE TO**
**LOUISVILLE'S 150-FOOT BAN**
**(SUBSTANTIVE DUE PROCESS)**

111.   Plaintiffs re-allege and incorporate by reference each and every allegation set forth in ¶¶ 1 through 110 of this Complaint as if fully set forth herein.

112.   The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects every American's economic liberty, or the right to pursue legitimate occupations free from unreasonable governmental interference.

113.   Defendant has violated the Fourteenth Amendment's Due Process Clause both on its face and as applied by enacting and enforcing the 150-Foot Ban, which prohibits Plaintiffs from conducting vending operations from their food trucks within 150 feet of any restaurant, café, or other eating establishment that sells similar food without permission.

114.   Defendant has no legitimate governmental interest for enacting or enforcing the 150-Foot Ban against Plaintiffs, or other food trucks.

115.   The purpose of Defendant's 150-Foot Ban is not rationally related to a legitimate governmental interest.

116.     The 150-Foot Ban does not address or ameliorate any legitimate health and safety concerns.

117.     The 150-Foot Ban exists to restrict competition by protecting a discrete interest group from economic competition, which is not a legitimate governmental purpose.

118.     Defendant's police power does not extend to engaging in economic protectionism benefitting restaurants, cafés, and other eating establishments at the expense of food trucks or other mobile food establishments, for no reason other than to protect one from competition by the other.

119.     The 150-Foot Ban arbitrarily violates Plaintiffs' economic liberty which deprives Plaintiffs of due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

120.     Defendant, its agents and employees, violate Plaintiffs' right to due process of law as guaranteed by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

121.     Unless Defendant is enjoined from committing the above-described constitutional violations of the Fourteenth Amendment, Plaintiffs will continue to suffer great and irreparable harm.

## COUNT II:
### FOURTEENTH AMENDMENT CHALLENGE TO LOUISVILLE'S 150-FOOT BAN
### (EQUAL PROTECTION)

122.     Plaintiffs re-allege and incorporate by reference each and every allegation set forth in ¶¶ 1 through 121 of this Complaint as if fully set forth herein.

123. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits the government from treating similarly situated persons differently, unless the reason for doing so bears a rational relationship to a legitimate governmental interest.

124. The 150-Foot Ban violates Plaintiffs' constitutional right to equal protection under the law both on its face and as applied because it arbitrarily discriminates between Plaintiffs and other mobile food unit vendors, depending on what they sell.

125. The 150-Foot Ban creates a discriminatory classification that penalizes Plaintiffs based entirely on whether they are within 150 feet of a restaurant, café, or eating establishment that sells similar food as that served by their food trucks. Thus, Troy King cannot operate his Pollo food truck in an area where restaurants, cafés, or eating establishments sell chicken, but Robert Martin can sell the hot dogs and sausages that Red's Comfort Foods offers. Similarly, Robert Martin cannot operate his Red's Comfort Foods food truck in an area where restaurants sell hot dogs and sausages, but Troy King can sell the chicken dishes that his Pollo food truck offers.

126. This classification has no rational relationship to any legitimate governmental interest, including protecting the public health and safety. A food truck, such as Troy King's Pollo, presents no threat to any legitimate governmental interest merely because it is vending within 150 feet of a restaurant that sells chicken.

127. The 150-Foot Ban also violates Plaintiffs' constitutional right to equal protection under the law both on its face and as applied because it arbitrarily discriminates between Plaintiffs and other mobile food unit vendors, depending on if they can secure written permission under the Permission Slip Exception to operate within 150 feet from restaurants, cafés, and other brick-and-mortar eating establishments that sell similar food.

20

128.    The 150-Foot Ban creates a discriminatory classification that penalizes Plaintiffs based entirely on whether they can obtain written permission from restaurants, cafés, and other brick-and-mortar establishments that sell similar food within 150 feet of a food truck's vending location. Thus, Troy King is barred from operating his Pollo food truck in an area where a restaurant sells chicken, hot dogs, and sausages, but Robert Martin could sell the hot dogs and sausages that Red's Comfort Foods offers if he obtains written permission by the same restaurant under the Permission Slip Exception.

129.    This classification has no rational relationship to any legitimate governmental interest, including protecting the public health and safety. A food truck, such as Troy King's Pollo, presents no threat to any legitimate governmental interest merely because it is vending within 150 feet of a restaurant that sells chicken without written permission from that restaurant.

130.    In other words, the 150-Foot Ban is nothing more than economic protectionism, which is not a legitimate governmental interest.

131.    Defendant, its agents and employees, violate Plaintiffs' equal protection as guaranteed by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

132.    Unless Defendant is enjoined from committing the above-described constitutional violations of the Fourteenth Amendment, Plaintiffs will continue to suffer great and irreparable harm.

**COUNT III:**
**FOURTEENTH AMENDMENT CHALLENGE TO**
**LOUISVILLE'S 150-FOOT BAN**
**(PRIVILEGES OR IMMUNITIES)**

133.    Plaintiffs re-allege and incorporate by reference each and every allegation set forth in ¶¶ 1 through 132 of this Complaint as if fully set forth herein.

134.    The Privileges or Immunities Clause of the Fourteenth Amendment to the United States Constitution protects every American's economic liberty, or the right to pursue legitimate occupations free from unreasonable governmental interference.

135.    Defendant has violated the Fourteenth Amendment's Privileges or Immunities Clause by enacting and enforcing the 150-Foot Ban, which prohibits Plaintiffs from conducting vending operations from their food trucks within 150 feet of any restaurant, café, or other eating establishment that sells similar food without permission.

136.    Defendant has no legitimate governmental interest for enacting or enforcing the 150-Foot Ban against Plaintiffs, or other food trucks.

137.    The purpose of Defendant's 150-Foot Ban is not related to a legitimate governmental interest.

138.    The 150-Foot Ban does not address or ameliorate any legitimate health and safety concerns.

139.    The 150-Foot Ban arbitrary violates Plaintiffs' economic liberty which deprives Plaintiffs of the privileges or immunities as guaranteed by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

140.    Defendant, its agents and employees, violate Plaintiffs' privileges or immunities as guaranteed by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

141.    Unless Defendant is enjoined from committing the above-described constitutional violations of the Fourteenth Amendment, Plaintiffs will continue to suffer great and irreparable harm.

## REQUEST FOR RELIEF

Therefore, Plaintiffs respectfully request the following relief:

A.      A declaratory judgment by the Court that, facially and as applied to Plaintiffs, the

150-Foot Ban codified at LMCO § 115.369(E) violates the Fourteenth Amendment to the U.S.

Constitution;

B.      Permanent injunctive relief prohibiting Defendant or its agents from enforcing the

150-Foot Ban codified at LMCO § 115.369(E);

C.      An award of attorneys' fees, costs, and expenses in this action;

D.      An award of nominal damages in the amount of $1 to each Plaintiff; and

E.      Any other legal or equitable relief to which Plaintiffs may show themselves to be

justly entitled.

Dated this 28th day of June, 2017.

Respectfully submitted,

**/s/ April A. Wimberg**

| | |
|---|---|
| Arif Panju* (TX Bar No. 24070380) | April A. Wimberg (KY Bar No. 95741) |
| INSTITUTE FOR JUSTICE | Holland N. McTyeire (KY Bar No. 46850) |
| 816 Congress Avenue, Suite 960 | BINGHAM GREENEBAUM DOLL, LLP |
| Austin, TX 78701 | 3500 National City Tower |
| Tel: (512) 480-5936 | 101 South Fifth Street |
| Fax: (512) 480-5937 | Louisville, KY 40202 |
| Email: apanju@ij.org | Tel: (502) 587-3719 |
| | Fax: (502) 540-2135 |
| | Email: awimberg@bgdlegal.com |
| Robert Frommer* (VA Bar No. 70086) | hmctyeire@bgdlegal.com |
| INSTITUTE FOR JUSTICE | |
| 901 North Glebe Road, Suite 900 | |
| Arlington, VA 22203 | *Local Counsel for Plaintiffs* |
| Tel: (703) 682-9320 | |
| Fax: (703) 682-9321 | |
| Email: rfrommer@ij.org | |

*Attorneys for Plaintiffs*
* *Pro Hac Vice* Applications to be Filed